**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

MICHAEL LOPRESTI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NOUVEAU ESSENTIALS MARKETING LLC,

Defendant.

Case No.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Michael LoPresti ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Nouveau Essentials Marketing LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

### NATURE OF THE ACTION

1. This putative class action arises out of Defendant's systematic and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and its implementing regulations adopted by the Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq*.

2. Through its enactment of the TCPA, Congress sought to protect consumers from intrusive and unwanted robocalls and text messages that invade

privacy and disrupt daily life. *See Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (noting TCPA's aim to curb "abusive telemarketing practices").

3. As alleged herein, Defendant engaged in a pattern of unlawful telemarketing by targeting Plaintiff and the proposed Class ("Class," defined below) with unsolicited texts, causing widespread annoyance and harm, in violation of the TCPA including by:

a. using an automatic telephone dialing system as defined in 47 U.S.C. § 227(a)(1) ("ATDS"); and

b. contacting numbers registered on the National Do Not Call Registry ("National DNC") in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

4. Through this action, Plaintiff seeks an award of actual and statutory damages to Plaintiff and the Class to compensate for the injuries inflicted by Defendant's misconduct, and injunctive relief to halt ongoing and future unlawful telemarketing practices in violation of the TCPA.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

6. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's purposeful contacts with this state through its initiation and/or direction of unlawful telemarketing to Plaintiff, who received such telemarketing while located in this state. Defendant purposefully availed itself of the privilege of conducting business in this state by targeting consumers in this state with telemarketing activities, thereby establishing minimum contacts sufficient to support the exercise of personal jurisdiction.

7. **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, including Defendant's transmission of unlawful telemarketing to Plaintiff who was located in this district.

**PARTIES**

8. Plaintiff is a natural person and, at all relevant times, was a resident of Marion County, Florida.

9. Defendant is a legal entity organized under the laws of California with its principal place of business in Alameda County, California.

**TCPA BACKGROUND**

10. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb the explosive growth of abusive telemarketing practices that invade consumer privacy and disrupt daily life. Congress

recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). The TCPA targets unwanted calls and text messages, such as those alleged herein, to protect consumers from unsolicited intrusions. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

11. The TCPA applies equally to unsolicited text messages, which cause identical privacy harms as calls. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ((Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)."). Violations of the TCPA cause concrete harm like invasion of privacy and annoyance, which Congress deemed actionable without additional injury. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, 578 U.S. at 341).

12. The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an ATDS or an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or

produce numbers using a random or sequential number generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The TCPA also restricts telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National DNC, without prior express invitation or permission, and makes such claims actionable after more than one call in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

13. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

14. An entity can be vicariously liable under the TCPA for a call made on its behalf. Under those circumstances, the entity is deemed to have initiated the call through the person or entity. In a 2008 Declaratory Ruling, the FCC stated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("The 2008 FCC Ruling thus has the force of law[.]").

15. The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

16. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5). Defendant's alleged texts to Plaintiff and the

Class, without consent and in violation of DNC rules, fall squarely within the TCPA's prohibitions, warranting these remedies to redress the harm inflicted.

## FACTUAL ALLEGATIONS

17. At all relevant times Plaintiff was the subscriber and primary user of a cellular telephone number ending in 1554.

18. This is Plaintiff's personal phone line that is used as Plaintiff's residential phone and is the primary means for friends and family to reach Plaintiff at home.

19. Plaintiff does not maintain, and is not a subscriber to, any other phone line.

20. This number is not associated with any business.

21. Plaintiff registered this number on the National DNC at least 31 days prior to the events alleged herein.

22. Plaintiff never gave prior express written consent, or prior express permission or invitation to receive texts from Defendant.

23. Plaintiff did not transact business with Defendant within 18 months of receiving Defendant's texts.

24. Plaintiff did not make an inquiry regarding Defendant's products or services within three months of receiving Defendant's texts.

25. Defendant initiated or caused to be initiated numerous unlawful texts to Plaintiff's telephone number in violation of the TCPA.

26. Below are non-exhaustive examples of some of the unlawful texts that Defendant initiated to Plaintiff, and upon information and belief, Plaintiff alleges that

discovery will identify additional unlawful communications to Plaintiff's phone that were initiated by Defendant or on its behalf within the last four years.







27. The text messages above state that they are sent on behalf of "NVE," which is a reference to Defendant.

28. Further, based on the investigation of Plaintiff's counsel, the texts identified above were initiated by Defendant or on its behalf.

29. The purpose of each solicitation was to promote or encourage the purchase of Defendant's goods or services.

30. The following facts strongly suggest that Defendant used such an automated system: (1) Plaintiff never transacted business with Defendant; (2) Plaintiff

never provided their telephone number to Defendant; and (3) the texts used the same or similar generic message designed for *en masse* transmission.

31. Defendant's unlawful texts caused Plaintiff and the Class members caused concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received the unlawful texts at inconvenient times, causing Plaintiff to stop to check Plaintiff's phone and waste time answering the calls to confirm they were not for an emergency purpose, and because Plaintiff was forced to spend time investigating the source of the texts and seeking out legal counsel to stop Defendant's harassing solicitations.

32. Based upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all telephone solicitations advertising or promoting its goods and services, which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff and the Class members.

## CLASS ALLEGATIONS

33. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

> **TCPA Autodialer Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a text message (2) on their cellular phone (3) from Defendant or on its behalf (4) that was sent using the same equipment or type of equipment used to text Plaintiff, (5) and from whom

Defendant does not possess evidence of prior express written consent to such texts.

**TCPA National DNC Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received two or more text messages (2) in any 12-month period (2) from Defendant or on its behalf (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services (4) after their telephone number had been listed on the National DNC for at least thirty-one days, (5) and who did not transact business with Defendant within 18 months of receiving such text messages, and (6) who did not make an inquiry regarding Defendant's products or services within three months of receiving such text messages.

34. The Classes defined above are referred to herein individually or collectively as the "Class." Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

35. Excluded from the Class are Defendant and its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

36. ***Numerosity***. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiff alleges upon information and belief that each Class includes at least 40 members based on the nature and objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the company that engage in telemarketing. Class

members are ascertainable through objective criteria, such as Defendant's call and text records, which Defendant maintains, allowing identification through discovery.

37. ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a. Whether Defendant used an automatic telephone dialing system as defined in 47 U.S.C. § 227(a)(1) to initiate the texts at issue;

b. Whether Defendant contacted numbers registered on the National DNC in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

c. Whether Defendant's texts introduced an advertisement;

d. Whether Defendant's texts constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

e. Whether Defendant's conduct was knowing and/or willful;

f. Whether Plaintiff and the Class are entitled to statutory damages and the amount of such damages; and

g. Whether Defendant should be enjoined from further violations of law as alleged herein.

38. ***Typicality***. Plaintiff's claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by

Defendant and are based on the same legal theories. Plaintiff and Class members suffered similar harms, and Plaintiff is not subject to unique defenses.

39. ***Adequacy of representation***. Plaintiff will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiff has retained counsel experienced in complex consumer class actions and TCPA litigation and intends to vigorously prosecute this action. Plaintiff has no interests antagonistic to the Class.

40. ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendant's conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

41. In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfy the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a

practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Autodialer Class)**

42. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above as though fully set forth herein.

43. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

44. It is also a violation of the TCPA's implementing regulations adopted by the FCC to "initiate any telephone call (other than a call made for emergency purposes or is made with the

prior express consent of the called party) using an automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii).

45. Additionally, it is a violation of the TCPA's implementing regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2).

46. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

47. As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated texts to the cellular telephone numbers of Plaintiff and the Class using an automatic telephone dialing system within the meaning of the TCPA.

48. Defendant did not have prior express written consent—or any consent—to make such texts to Plaintiff and the Class using an automatic telephone dialing system.

49. Defendant, therefore, violated Section 227(b)(1)(A)(iii) and the TCPA's implementing regulations in Sections 64.1200(a)(1)(iii) and (a)(2).

50. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

51. Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

52. Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each text that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

53. Because Defendant knew or should have known that it was using an automatic telephone dialing system to initiate texts without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

54. Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each text that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

## COUNT 2

### Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National DNC Class)

55. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Count, as though fully set forth herein.

56. The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

57. The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

58. A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more

than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)].” 47 U.S.C. § 227(c)(5).

59. As alleged herein, Defendant—or third-parties acting on Defendant’s behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC.

60. Defendant’s texts to Plaintiff and the Class members constitute “telephone solicitations” under the TCPA because they were initiated “for the purpose of encouraging the purchase or rental of…property, goods, or services[.]” 47 C.F.R. § 64.1200(f)(15).

61. Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class.

62. Defendant did not have prior express consent to initiate telephone solicitations to Plaintiff and the Class.

63. Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class.

64. Plaintiff did not transact business with Defendant within 18 months of Defendant’s telephone solicitations.

65. Plaintiff did not make an inquiry regarding Defendant’s products or services within three months of Defendant’s telephone solicitations.

66. As a result of Defendant’s violations of the TCPA, Plaintiff and the Class members were harmed.

67. Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

68. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone solicitation that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

69. Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

70. Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone solicitation that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, call logs, text message records, or other itemizations associated with the allegations herein, including those in the possession of any vendors, individuals, or companies contracted, hired, or directed by Defendant to assist in initiating the alleged unlawful texts. This includes but is not limited to records identifying telephone numbers contacted, dates and times of texts, consent documentation, and do-not-call requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A. An order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B. An award to Plaintiff and each Class member of actual damages;

C. An award to Plaintiff and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

D. An injunction prohibiting Defendant from further violations of the TCPA;

E. An award to Plaintiff and the Class of their reasonable attorney's fees as available under the law;

F. An award to Plaintiff and the Class of their costs of this action as available under the law;

G. An award to Plaintiff and the Class of post-judgment interest as available under the law;

H. Any such further and other relief as the Court deems just and equitable.

Dated: April 30, 2025 Respectfully submitted,

*/s/ Christopher Gold*

Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*