# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

MICHAEL LOPRESTI, individually and
on behalf of all others similarly situated,

        *Plaintiff*,

v.

NOUVEAU ESSENTIALS
MARKETING LLC,

        *Defendant*.

Case No.: 5:25-cv-00282-CEM-PRL

CLASS ACTION

_____/

## PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND INCORPORATED MEMORANDUM OF LAW

### I.    Summary

Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation ("R&R") on Defendant's motion for judgement on the pleadings (ECF No. 62), which concludes that an unwanted text message solicitation is not a "call" or a "telephone call" within the meaning of the Telephone Consumer Protection Act ("TCPA") and, thus, does not give rise to a private right of action under any provision of the TCPA. The R&R does not appear to reflect any independent analysis of the statutory text at issue. Rather, it adopts the analyses in *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT, 2025 LX 468945 (M.D. Fla. Oct. 24, 2025).

District courts are required to interpret statutes with their ordinary common meaning at the time of enactment. *El Sayed* interpreted the statutory terms here with their colloquial, "common American English usage" and concluded that the terms "telephone call" and "text message," are "separate and distinct forms of communication" so Congress could not have intended to create a private right of action for text messages. *Id.*, at 3. But back in 1991 when the TCPA was enacted, "text message" was not a widely used or even known term. That does not mean, however, that Congress intended to exclude text-based communications from the TCPA's private rights of action. To the contrary, if the statutory terms are interpreted as they would have been in the telecommunications context back in 1991, it is clear that a "call" or even a "telephone call" could not be limited strictly to a voice communication.

As the Ninth Circuit recently held, the statutory term "call" "refer[s] to an attempt to communicate by telephone." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026). An "attempt" means the call is still a "call" if there is no answer our "voice" communication. And a telephone is still a telephone regardless of whether it later develops the ability to send text communications; just like an autonomous driving Tesla is still a vehicle subject to traffic laws. Notably, the Ninth Circuit in *Howard* analyzed both statutory terms that appear in the TCPA that are relevant here, "call" and "telephone call." *Id.*, at 1123 ("The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[] call" or

2

"initiat[ing] a[] telephone call" to that phone number, (2) "using an artificial or prerecorded voice.").

The conclusion that text messages qualify as calls is further supported by analyzing the complete statutory text. Between two subsections of Section 227(b) and Section 227(c), the TCPA provides a private right of action for both "calls" and "telephone calls" to every type of telecommunications technology that existed at the time, including text-based communications to a "paging service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* § 227(b)(1)(B) (applying to "telephone calls" to any "residential telephone line"). Notably, Section 227(b) is titled, "Restrictions on use of automated *telephone* equipment[,]" and a number of the devices that receive protections are certainly not "telephones" in the traditional sense, such as a "specialized mobile radio service" or "radio carrier." § 227(b)(1)(A)(iii). So if "calls" using "telephone equipment" includes communications to a paging service—which is text based—as well as to radio devices—which are not "telephones"—then Congress necessarily intended for these terms to be broader than solely a voice telephone call.

The R&R does not address any of this analysis that was thoroughly conducted by the district courts holding the majority view. The R&R's conclusion also goes even a step further than the line of cases it relies on: while the main dispute in these cases has involved Section 227(c), the R&R may be one of the first court to conclude that text messages are not actionable under Section 227(b).

Critically, the Eleventh has found that "Congress…provided a cause of action to redress the harm that unwanted telemarketing texts…cause." *Drazen v. Pinto*, 74

F.4th 1336, 1345 (11th Cir. 2023). This was not mere *dicta*; this finding was central to the Eleventh Circuit's analysis and holding on the question of whether the harm from text messages that Congress identified when enacting the TCPA shared "close relationship" with traditional harms sufficient to confer Article III standing. *Id.*, at 1339. And this finding remains good law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("The holdings of those cases that specific agency actions are lawful…are still subject to statutory stare decisis despite the Court's change in interpretive methodology."). Although this is obvious, to the Eleventh Circuit it was "worth emphasizing that district courts in this Circuit must apply our caselaw when addressing issues of federal law." *Drazen v. Pinto*, 74 F.4th at 1340 n.2 (11th Cir. 2023).

The minority view finds no textual support. These courts have simply written into the statutory text the word "voice" when there is nothing in the text supporting such a distinction between voice and text. Plaintiff respectfully objects because that conclusion conflicts with the TCPA's text, structure, purpose, and the overwhelming weight of precedent recognizing that text messages qualify as calls under the statute. If adopted, the R&R would effectively remove one of the primary modern forms of telemarketing—automated text messaging—from the TCPA's protections with no textual basis, a result inconsistent with Congress's intent to broadly protect consumers from intrusive telemarketing practices, and thereby open the floodgates to mass unrestricted telemarketing text campaigns directed at millions of consumers.

4

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(b)(2), a party may serve and file specific written objections to the proposed findings and recommendations of a magistrate judge. When a party objects to a magistrate judge's report and recommendation, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).[1] The court "may accept, reject, or modify, in whole or in part," the findings or recommendations. *Id.*; *Rivera v. Portfolio Recovery Assocs., LLC*, 2025 U.S. Dist. LEXIS 89694, at *3 (S.D. Fla. May 12, 2025).

*De novo* review requires the district judge to give "fresh consideration" to the issues raised by the objection and to independently evaluate both factual and legal questions. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990). This independent review is "essential to the constitutionality" of § 636, because Article III judges must retain "the ultimate adjudicatory power" over dispositive matters. *Rivera*, 2025 U.S. Dist. LEXIS 89694, at *2 (citing *Jeffrey S.*, 896 F.2d at 513). Congress likewise intended district courts to give "fresh consideration" to issues specifically objected to. *Jeffrey S.*, 896 F.2d at 512 (quoting H.R. Rep. No. 94-1609, at 6163 (1976)).

Importantly, the "clearly erroneous" standard does not apply here. That standard governs appellate review—not a district court's review of objections under § 636(b)(1). *Id.* Here, Plaintiff objects to the R&R's legal conclusion that the TCPA's

---

[1] Internal citations and quotations omitted.

private rights of action in 47 U.S.C. §§ 227(b) and 227(c) do not apply to the telemarketing text messages alleged in the Plaintiff's Complaint. Full *de novo* review is therefore required.

### III. ARGUMENT

#### A. The Report and Recommendation Conflicts with the Overwhelming Weight of Authority Recognizing that Text Messages are "Calls" Under the TCPA

Defendant's Motion raises the argument that text messages are not "telephone calls" under the TCPA—an argument that has been rejected at least four times in the Southern District of Florida and once in this District since *McLaughlin* was decided. *See Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496, 2026 WL 91453, at *2, 2026 U.S. Dist. LEXIS 6252 at *5-6 (S.D. Fla. Jan. 13, 2026) ("There is no dispute that Plaintiff has adequately alleged the first two elements of her TCPA claim [under Section 227(c)(5)], given that a text message constitutes a 'call' under the TCPA[.]") (collecting cases); *Bosley v. A Bradley Hosp. LLC*, No. 25-cv-22336, 2025 WL 2686984, at *5, 2025 U.S. Dist. LEXIS 183986 at *12 (S.D. Fla. Sept. 19, 2025) (same); *Piet v. Office Depot, LLC*, No. 9:24-cv8488-WPD, 2025 U.S. Dist. LEXIS 230981, at *5 (S.D. Fla. Nov. 24, 2025) ("[T]his Court will continue to follow existing Eleventh Circuit precedent and holds that a text message is a call for the purpose of the TCPA.... In so holding, the Court will afford 'appropriate respect' to the FCC's interpretation, which has been controlling for nearly twenty-five years."); *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910-WPD, 2025 U.S. Dist. LEXIS 231053, at *6 (S.D. Fla. Nov. 25, 2025)

6

(same); *Harriel v. Beals, Inc.*, No. 8:25-cv-165-TPD-SPF, 2025 WL 2379617, at *2 (M.D. Fla Aug. 15, 2025) ("While the Court acknowledges the changing landscape concerning deference owed to agency interpretation, it nevertheless finds the FCC's interpretation persuasive and accurate in this case."); *Bramlett v. RES 360 LLC*, No. 1:25-cv-3312-MLB, 2026 WL 613023, at *1 (N.D. Ga. Mar. 4, 2026) ("It is undisputed that Defendants' text messages qualify as "telephone calls" under the TCPA, and that Defendants 'initiated' those messages and 'transmitted' them to the Plaintiff.").[2] This Court should reach the same conclusion here.

In fact, post-*McLaughlin*, the overwhelming majority of courts across the country share this view. *See McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152-SDD-RLB, 2026 WL 413198, at *6, 2026 U.S. Dist. LEXIS 30157 at *13 (M.D. La. Feb. 13, 2026) ("[T]he Court finds that Subsection 227(c)(5) applies to cell phone text messages."); *Hernandez v. Bedford Dental L.L.C.*, No. 1:25-cv-06787, 2026 U.S. Dist. LEXIS 23208 at *3 (N.D. Ill. Feb. 4, 2026) ("The Court thus declines to hold that the TCPA does not apply to text messages."); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 WL 319779 at *6, 2026 U.S. Dist. LEXIS 6340 at * 12, 13 (W.D. Tex. Jan 13, 2026) ("Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)."); *Alvarez v.*

---

[2] While there are cases in this Circuit taking the opposite position, they are the minority. *See McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. Aug. 26, 2025).

*Fiesta Nissan, Inc.*, No. 7:25CV-00343, 2026 WL 202930 at *6,  2026 U.S. Dist. LEXIS 14155, at *16-17 (S.D. Tex. Jan. 26, 2026) ("[B]oth the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List."); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868 at *3, 2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 2, 2025) (holding that texts are calls under Section 227(c)(5)); *Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 at *5, 2025 U.S. Dist. LEXIS 251694 at *22 (S.D.N.Y. Dec. 5, 2025) (same); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274 at *4, 2025 U.S. Dist. LEXIS 138638 at *10 (D. Or. July 21, 2025) (same); *Wilson v. MEDVIDI, Inc.*, No. 5:25-cv-03996, 2025 WL 03996 at *3,  2025 U.S. Dist. LEXIS 198827, at *9 (N.D. Cal. Oct. 7, 2025) (same); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607-H-BLM, 2025 WL 3275607 at *3, 2025 U.S. Dist. LEXIS 230841 at *8 (S.D. Cal. Nov. 24, 2025) (same); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725 at *3, 2025 U.S. Dist. LEXIS 221088, at *7 (N.D. Ill. Nov. 10, 2025) (same).

Most notably, the Ninth Circuit just reaffirmed the holding in *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 54 (9th Cir. 2009), that a text is a call under the TCPA generally. *See Howard v. Republican Nat'l Comm.*, 2026 WL 90273 at *4, 2026 U.S. App. LEXIS 787 (9th Cir. Jan. 13, 2026). The *Howard* Court explicitly stated, "Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield's* substantive

8

analysis that the conclusion would be the same even in the absence of Chevron deference." *Id*. Specifically, while the claims at issue involved both of the statutory terms, "call" and "telephone call," the Ninth Circuit analyzed them jointly by focusing on the word "call" and found that two key points from the analysis of statutory construction in Satterfield "support the conclusion that a 'text message' constitutes a 'call' within the meaning of the TCPA": (1) that it accords with the plain meaning of "call"; and (2) that treating a text as a call was consistent with the TCPA's purpose of protecting privacy rights. *Id*.; *see also Drazen v. Pinto*, 74 F.4th 1336, 1345–46 (11th Cir. 2023) (holding that "the receipt of an unwanted text message causes a concrete injury" under the TCPA); *Muccio v. Glob. Motivation, Inc.*, No. 23-10081, 2023 WL 5499968, at *1 (11th Cir. Aug. 25, 2023) (applying this holding); *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1067–68 (S.D. Fla. 2020) ("A text message to a cell phone qualifies as a 'call' under the TCPA.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)).

Notably, just today, a district court in California followed *Howard* and *Satterfield* to join the growing majority of courts correctly applying the ordinary meaning at the time of enactment and holding that a text message does qualify as a "telephone call." *Taha v. Momentive Software, Inc.*, No. 8:25-cv-2330-DOC-JDE, Doc No. 31 (C.D. Cal. Mar. 12, 2026) (Order Denying Defendant's Motion to Dismiss).

For the following reasons, the majority view is the correct one and thus the Magistrate Judge's R&R should be rejected.

9

### B. Interpreting the Statutory Language to Include Text Messages is Consistent with the Statute and Legislative Intent.

"The ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone." *See Better Mortg.*, 2025 WL 3493815, at *5 (citing Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of calling on the telephone,' i.e., "to get or try to get into communication by telephone," or "to deliver (a message) by telephone"); Webster's New International Dictionary 318 (1993) ("to communicate with or try to get into communication with a person by telephone"); *Satterfield*, 569 F.3d at 953–54 (same)). This definition easily encompasses text messages. *Better Mortg.*, 2025 WL 3493815, at *5; *Mujahid*, 2025 WL 3140725, at *2; *Alvarez*, 2026 WL 202930, at *4.

Notably, the Ninth Circuit just affirmed *Satterfield*, holding that this definition is correct and that texts are calls under the TCPA. *See Howard*, 2026 WL 90273, at *4. It found that two key points from the analysis of statutory construction in *Satterfield* "support the conclusion that a 'text message' constitutes a 'call' within the meaning of the TCPA": (1) that it accords with the plain meaning of "call"; and (2) that treating a text as a call was consistent with the TCPA's purpose of protecting privacy rights. *Id.*; *see also Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1249 (S.D. Fla. 2019) ("[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy.") (quoting *Satterfield*, 569 F.3d at 954).

10

The *Alvarez* court recently found that "there is nothing in the meaning of 'telephone' that excludes the function of a text message[,]" by using *In re Erikson*, 815 F.2d 1090 (7th Cir. 1987) as an analogy:

> In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain 'one mower' and 'one hay loader.' *Id*. at 1091–92. Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn 'mowers' were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and 'hay loaders' were replaced by automatic bailing/tying machines. *Id*. at 1092–93. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that **a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item** (e.g., "a Massey-Ferguson Mower, Model GY-2589, manufactured in 1935, serial number 3875808") **but a class of things that share some important feature**." Id. at 1092 (emphasis added). Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower,' … because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." *Id*. at 1093.

*Alvarez*, 2026 WL 202930, at *4 (emphasis added). This reasoning applies here. As in *Alvarez*, "Defendant[s] seem[] to define 'telephone call' as 'a call from a telephone as existed in 1991'—that is, only able to communicate by voice." *Id*. at *5. Defendants therefore make the fatal mistake of defining the "call" by the age of the technology used to initiate it, thereby excluding even unlawful voice calls sent with modern telephones from the TCPA. *Id*. In the words of Chief Judge Crane:

> Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it 'could not have been dreamed today' can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute.

11

*Id.* (citing Reading Law (2012)); *see also Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008 (N.D. Ill. 2010) ("[T]he legislative history of the TCPA reflects that Congress anticipated future technologies when it enacted the statute.") (citing 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies.")). This interpretation is clearly reasonable.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). However, in arguing that Section 227(c)(5) does not regulate text messages, the R&R views this provision "in a vacuum." *Id.* While Section 227(c)(5) refers to "telephone call[s,]" it explicitly confers a private right of action to individuals for a "violation of the regulations **prescribed under this subsection**[.]" 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c)(1) explicitly instructs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object[,]" and Section 227(c)(2) empowers the FCC to promulgate regulations in furtherance of that interest. 47 U.S.C. §§ 227(c)(1)-(2) (emphasis added).

However, "telephone solicitation," as defined by the TCPA, encompasses more than a telephonic voice call—it refers to "the initiation of a **telephone call or message** for the purpose of encouraging the purchase or rental of, or investment in, property,

12

goods, or services, which is transmitted to any person[.]" *Id.* at § 227(a)(4) (emphasis added); *see Wilson v. MEDVIDI, Inc.*, No. 5:25-cv-03996, 2025 WL 03996, at *3 (N.D. Cal. Oct. 7, 2025) ("This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted.") (citing *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation[.]")) (emphasis added). Congress therefore expressly commissioned the FCC to promulgate regulations protecting consumers from unwanted telephone calls and messages sent for telemarketing purposes.

"[I]t strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones. Defendant's invitation to inject a distinction between written and oral telephone solicitations is contrary both to the remedial bent to the TCPA and precedent." *MEDVIDI*, 2025 WL 2856295, at *3 (collecting cases); *see also Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) ("It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry."); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1249 (S.D. Fla. 2019) ("[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy.") (quoting *Satterfield*, 569 F.3d at 954).

C.   **The R&R's Interpretation Would Create a Massive Loophole in the TCPA and Undermine Congress's Consumer Protection Purpose.**

Adopting the R&R's interpretation would dramatically narrow the TCPA in a manner that Congress did not intend. Congress enacted the TCPA to protect consumers from the nuisance and the invasion of privacy associated with unwanted telemarketing communications. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The statute was designed to give consumers meaningful control over who may contact them through their telephones and to curb the proliferation of intrusive telemarketing practices.

Text messages today represent one of the primary vehicles through which telemarketing communications are delivered. Businesses increasingly use automated text campaigns to advertise goods and services, precisely because text messaging allows advertisers to reach large numbers of consumers instantly and at minimal cost. Consumers experience these messages in the same way they experience unwanted voice calls: they arrive directly on the recipient's cellular telephone, trigger notifications, and demand the recipient's attention. For purposes of consumer privacy, there is no meaningful distinction between an unwanted telemarketing call and an unwanted telemarketing text.

Adopting the R&R's interpretation would therefore create a sweeping loophole in the TCPA's regulatory scheme. Telemarketers could simply shift their outreach from voice calls to solely text messages and thereby evade the statute's core protections—including the National Do Not Call Registry. Such a result would

14

frustrate Congress's central objective of protecting consumers from intrusive telemarketing communications and would effectively strip millions of consumers of protections they have long relied upon.

Courts interpreting consumer-protection statutes routinely reject constructions that would allow regulated entities to circumvent statutory safeguards through minor technological variations. The TCPA is a consumer protection statute, and because it is remedial in nature, it should be construed liberally in favor of consumers. *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, at \*707 (11th Cir. 1998) (...a consumer protection statute...is remedial in nature and therefore must be construed liberally....); *See also Legg v. Voice Media Grp., Inc.*, 990 F.Supp 2d 1351, 1354 (S.D. Fla. 2014) (the TCPA is a consumer protection statute, and because it "is remedial in nature, it should be construed liberally in favor of consumers."); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3rd Cir. 2013) ("Because the TCPA is a remedial statute, it should be construed to benefit consumers."). Interpreting the TCPA to exclude text messaging would allow telemarketers to accomplish through texts precisely what Congress prohibited through voice calls. Nothing in the statutory text suggests that Congress intended such an easily exploitable loophole.

The far more sensible—and widely accepted—interpretation is that a text message is simply a modern form of initiating communication through a telephone, which is the definition of a "call" and was so at the time the TCPA was enacted. Treating text messages as "calls" under the TCPA ensures that the statute continues to function as Congress intended: protecting consumers from unwanted telemarketing

15

communications. Because the R&R's contrary interpretation would undermine that purpose and create a substantial gap in the statute's consumer protections, it should be rejected.

**D.    The R&R Improperly Disregards the FCC's Authoritative Interpretation that Text Messages are Covered by the TCPA.**

*McLaughlin* held that "[d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id*. at 155 (citing *Loper Bright*, 603 U.S. at 402). Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) ("Protection of Subscriber Privacy Rights"). It then empowered the FCC to develop and prescribe "regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id*. at § 227(c)(1)(E); *see also id*. at § 227(c)(2) (instructing the FCC to effectuate this purpose in paragraph (c)(1)). The Do-Not-Call Registry ("DNCR") provisions were implemented pursuant to Congress's express recommendations. *See* 47 U.S.C. § 227(c)(3) (explaining that "[t]he regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and listing requirements for such regulations). Because the FCC exercised its discretion granted

16

by the statute in holding that text messages are calls under the DNCR provisions, that conclusion by an agency that is an expert in telecommunications should be afforded appropriate respect.

## IV.   CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Report and Recommendation. The R&R's conclusion that text messages are not "calls" under the TCPA conflicts with the statute's text, structure, and purpose, as well as the substantial body of precedent recognizing that text messages fall within the TCPA's prohibitions. Courts—including the Supreme Court and multiple federal appellate courts—have long treated text messages as a form of telephone communication covered by the statute. Nothing in the TCPA's language or history supports carving out text messages from its protections.

Adopting the R&R would create a sweeping and unwarranted gap in the TCPA's coverage by excluding one of the most common modern forms of telemarketing from the statute's reach. Congress enacted the TCPA to protect consumers from intrusive and unwanted telemarketing practices, and courts have consistently interpreted the statute in a manner that fulfills that purpose. Removing text messaging from the TCPA's protections would undermine those safeguards and allow telemarketers to evade the statute through the very technology now most frequently used to deliver telemarketing solicitations.

Because the TCPA's text, structure, purpose, and longstanding precedent confirm that text messages qualify as "calls" under 47 U.S.C. §§ 227(b) and 227(c), the

R&R's contrary conclusion is incorrect as a matter of law. Plaintiff therefore respectfully requests that the Court reject the Report and Recommendation and deny Defendant's Motion for Judgment on the Pleadings.

Dated: March 12, 2026

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*/s/ Garrett Berg*
Garrett Berg, Esq.
Florida Bar No. 1000427
**Garrett Berg Law, P.A.**
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com

*Counsel for Plaintiff*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on March 12, 2026.

<div style="margin-left: 40%;">

*/s/ Christopher Gold*
Christopher Gold, Esq.

</div>

18